**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**BILLIE A. ROYSTER,**

      **Plaintiff,**

v.                                    Civil Action 2:20-cv-3128
                                         Judge Michael H. Watson
                                         Magistrate Judge Jolson

**COMMISIONER OF
SOCIAL SECURITY,**

      **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Billie A. Royster, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff filed her applications for DIB and SSI on January 26, 2017, alleging that she became disabled on June 10, 2014. (Tr. 222–29). After Plaintiff's applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on March 8, 2019, and issued a decision on April 24, 2019, denying Plaintiff's applications. (Tr. 46–84, 25–45). The Appeals Council declined to review that unfavorable determination, and thus, it became final for purposes of judicial review. (Tr. 1–7).

On June 19, 2020, Plaintiff initiated this action. (Doc. 1). The Commissioner filed the administrative record on November 10, 2020 (Doc. 12). Thereafter, Plaintiff filed her Statement

of Errors (Doc. 17) and the Commissioner filed an Opposition (Doc. 19). Plaintiff did not file a Reply. Therefore, this matter is now ripe for review.

**A.      Relevant Medical History**

Plaintiff challenges only the ALJ's evaluation of her physical impairments— and her fibromyalgia in particular. Accordingly, the Undersigned's summary and analysis focuses on the same. The ALJ summarized the relevant medical evidence related to Plaintiff's physical impairments:

> The record reflects diagnoses of fibromyalgia and reactive arthritis and [Plaintiff]'s significant complaints of fatigue, diffuse pain, stiffness, weakness and swelling. However, the objective evidence does not support the degree of limitation the [Plaintiff] alleges. Clinical examination findings routinely show the [Plaintiff] to be well-appearing and in no acute distress (see e.g., Exhibits 3F/2, 7, 10, 15; 8F/19). [Plaintiff] reported improved sleep with medication (Exhibits 3F/14; 14F/3, 7). Physical examinations often revealed normal musculoskeletal symmetry, tone, strength and range of motion; steady gait; no atrophy and no deformities (Exhibits 3F/2, 7, 10; 6F; 8F/ 19; 18F). [Plaintiff] underwent thorough work-up for inflammatory and autoimmune disorders, which were all negative (Exhibits 3F/7, 4F; 7F/3; 8F/11; 21F/9). Electrodiagnostic testing was essentially normal with minor findings attributed to poor patient effort (Exhibit 12F/2). [Plaintiff] also underwent a spinal tap with negative results (Exhibits 5F; 13F/ 16; 20F/43). While [Plaintiff] developed some swelling of the left index finger and fourth right toe joints, imaging was negative for fracture (Exhibit 16F/3). She followed with rheumatologist, Irving Rosenberg, MD, who noted improved joint swelling with medication (Exhibits 7F/3; 21F/9). Due to her variety of neurological symptoms including imbalance, stiffness, intermittent numbness of upper and lower extremities, tremor and twitching, the [Plaintiff] was also referred for neurological consult. [Plaintiff]'s twitching was believed to be psychogenic as her involuntary movements were "distractible" on exam and her extensive work-up was unremarkable. Furthermore, despite the [Plaintiff]'s allegations of balance problems and resulting falls, the record does not contain evidence of the need for ambulatory aids or medical treatment for injuries resulting from falls. [Plaintiff] was counseled regarding somatization disorder (Exhibits 8F/14; 10F). The record reflects that prescribed medications such as, Gabapentin and Sulfasalazine, helped stabilize the [Plaintiff]'s symptoms as she rated her pain overall as two out of ten (Exhibits 14F/3, 7; 20F/10, 28; 21F/36).
>
> With respect to the [Plaintiff]'s neck pain, imaging revealed significant cervical disc disease at the C5-C6 level with [kyphotic] deformity and foraminal stenosis (Exhibits 8F/14; 13F; 18F). [Plaintiff] received no significant benefit from epidural steroid injections or conservative measures including physical therapy and

medication. Accordingly, surgical intervention was recommended and [Plaintiff] underwent an anterior cervical decompression and fusion of the C4-5 and C5-6 levels with graft and anterior plate fixation (Exhibits 17F; 18F; 19F/1, 10, 13; 22F/19-20; 29F). Within a week of the surgery, [Plaintiff] reported significant improvement in her neck pain and soon thereafter, her neck pain had completely resolved. Follow-up imaging confirmed intact hardware, preserved vertebral heights without evidence of acute fracture or spondylolisthesis and maintained intervertebral disc space (Exhibits 20F/27; 21F/20-21, 36; 22F/4, 12, 21). Despite resolution of the [Plaintiff]'s neck pain, she continued to report chronic low back pain. Lumbar spine imaging revealed a small disc protrusion at the L4-5 level without compression and no significant degenerative disc changes. On exam, she exhibited normal gait and station, normal light touch sensation and normal muscle bulk. [Plaintiff]'s neurosurgeon referred her for pain management and specifically noted that he did not recommend surgical intervention. [Plaintiff] did participate in physical therapy with short-term relief of her lumbar pain (Exhibits 20F/27; 22F/3-4; 23F; 26F).

(Tr. 34–35).

B.    **The ALJ's Decision**

The ALJ found that Plaintiff met the insured status requirement through December 31, 2016, and that she had not engaged in substantial gainful employment since June 10, 2014, the alleged date of onset. (Tr. 30). The ALJ also determined that Plaintiff suffered from the following severe physical and mental impairments: fibromyalgia; reactive arthritis; cervical spine disc herniation and kyphotic deformity status post corpectomy and fusion; lumbar spine disc disease; depression; anxiety; somatization disorder and insomnia. (Tr. 31). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (*Id.*).

The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she must alternate between sitting and standing every hour for two to three minutes; can frequently stoop, kneel, crouch and crawl; frequently handle and finger with the bilateral upper extremities; must avoid all hazards including moving machinery, unprotected heights, ladders, ropes and scaffolds and cannot perform fast paced work or work with strict production

quotas.

(Tr. 33).

When assessing Plaintiff's RFC, the ALJ considered and analyzed the opinion evidence about Plaintiff's physical impairments.

> As for the opinion evidence, the undersigned considered the opinion Bureau of Disability Determination (BDD) medical consultant opinion at Exhibits 1A and 2A, affirmed at Exhibits 5A and 6A, limiting the [Plaintiff] to a reduced range of light work with postural limitations. The undersigned finds that hearing level evidence supports additional manipulative and environmental limitations, in addition to the [Plaintiff]'s need to alternate between sitting and standing. Accordingly, the undersigned affords this opinion some weight, but not significant weight.

(Tr. 35).

> The undersigned considered Dr. Swedberg's opinion that [Plaintiff] has a "moderate amount" of exertional and postural limitations (Exhibit 6F). The undersigned gives this opinion partial weight to the extent Dr. Swedberg's examination findings are consistent with the objective evidence of record. Nonetheless, "moderate" is not defined and does not adequately describe function or usefully convey the extent of [Plaintiff]'s limitations. Additionally, the undersigned finds that the evidence of record overall supports manipulative and environmental limitations, for which Dr. Swedberg has not accounted. [ ].

> Although not acceptable medical sources under the regulations, the undersigned also considered the opinions provided by Christina Shaw, MOT, OTR/L and Jana Harrington, LPC, LCDC (Exhibits 25F, 27F). Ms. Shaw's assessment is an overestimation of the [Plaintiff]'s limitations, as the objective medical evidence of record, as discussed above, does not support it. Further to the extent that Ms. Shaw offers the opinion that [Plaintiff] is capable of sedentary work that is an issue reserved to the Commissioner. Accordingly, the undersigned gives this opinion little weight. Likewise, with respect to the questionnaire completed by Ms. Harrington, the presumption that [Plaintiff] would be absent from work due to mental health issues more than four times per month is not supported in the evidence. Her own treatment notes do not suggest such extreme limitations nor do treatment notes or documented observations from other sources. For these reasons, the undersigned also gives this opinion little weight.

(Tr. 36).

The ALJ determined Plaintiff had no past relevant work experience. (*Id.*). Further, relying on the VE's testimony, the ALJ determined that given Plaintiff's age, education, work experience

4

and RFC, she was able to perform work that existed in significant numbers in the national economy, such as a cleaner or sorter. (Tr. 37). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from June 10, 2014, through the date of the decision. (Tr. 38).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff first alleges that the ALJ committed reversible error because she "undertook no explicit evaluation of Plaintiff's credibility." (Doc. 17 at 16). The Undersigned disagrees.

Social Security Ruling ("SSR") 12-2p sets forth how the Social Security Administration will determine if a claimant has fibromyalgia and how the Administration will evaluate a claimant's subjective statements about her fibromyalgia symptoms and functional limitations (i.e., how the Administration does a credibility determination, a.k.a. a subjective symptom evaluation).

SSR 12-2p, 2012 WL 3104869 (July 25, 2012). With regard to making a credibility determination or a subjective symptom evaluation, SSR 12-2p indicates that an ALJ must use the two-step process set forth in Social Security Ruling 96-7p. *Id*. SSR 96-7p has been replaced, however, by Social Security Ruling 16-3p, which applies to decisions, like the one at issue here, rendered on or after March 28, 2016. SSR 96-7p, 2017 WL 5180304 (October 25, 2017). Nevertheless, both SSR 96-7p and SSR 16-3p refer to the same two-step process articulated in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Indeed, the difference between the two rulings is that the later ruling removed the term "credibility" from the earlier ruling in order to "clarify that the subjective symptoms evaluation is not an examination of an individual's character." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x. 113, 119 n.1 (6th Cir. 2016) (internal quotation omitted). Despite this, courts have, at times, continued to refer to the subjective symptom evaluation as a credibility determination. *See e.g., Phillips v. Comm'r of Soc. Sec.*, No. 5:20 CV 126, 2021 WL 252542, at *8 n.5 (N.D. Ohio Jan. 26, 2021) (citing *Pettigrew v. Berryhill*, No. 1:17-cv-01118, 2018 WL 3104229, at *14 n.14, (N.D. Ohio June 4, 2018) *report and recommendation adopted*, 2018 WL 3093696 (N.D. Ohio June 22, 2018) (explaining that "[w]hile the court applies the new SSR, it declines to engage in verbal gymnastics to avoid the term credibility where the usage of the term is most logical.")).

The first step of the subjective symptom evaluation requires an ALJ to determine if there is a medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms. 2017 WL 5180304, *3-4. Fibromyalgia satisfies that first step. 2012 WL 3104869, at *5. At the second step, an ALJ must evaluate the intensity and persistence of a claimant's symptoms to determine the extent to which they limit her ability to perform work-related activities. *Id.* At this second step, an ALJ considers the objective medical evidence. *Id.*

6

If objective medical evidence does not substantiate a claimant's subjective statements about the intensity, persistence, and functionally limiting effects of her symptoms, an ALJ must consider all of the evidence in the record including daily activities; medications or other treatments used to alleviate symptoms; the nature and frequency of the claimant's attempts to obtain medical treatment for symptoms; and statements by other people about the claimant's symptoms. *Id.*; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

In this case, the ALJ performed a subjective symptoms evaluation. The ALJ explicitly set forth the two-step process for doing so. She wrote:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)— i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques— that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

(Tr. at 33). The ALJ next summarized Plaintiff's subjective complaints:

> [Plaintiff] testified to or elsewhere indicated an inability to work due to problems standing, gripping, shaking, radiating neck and back pain, feet and hand swelling, as well as, balance and memory issues. She estimated that she could stand for ten minutes without pain and sit for five minutes without constant shifting. She testified that she frequently drops items and has trouble using zippers. [Plaintiff] stated that she has fallen down the stairs many times because of back issues. She also testified that two to three days per week she stays in bed all day leaving the bed only to use the bathroom. [Plaintiff] reported feeling tired from her medications, but only sleeping two to three hours per night. She also stated that she has trouble focusing and crying spells with "horrible" thoughts.

7

(Tr. 33–34). The ALJ also summarized Plaintiff's subjective complaints about her fibromyalgia, noting that Plaintiff had "significant complaints of fatigue, diffuse pain, stiffness, weakness, and swelling." (Tr. at 34).

The ALJ then found that the first step was satisfied because Plaintiff's "medially determinable impairments could reasonably be expected to cause [her] alleged symptoms," but that the second step was not satisfied because Plaintiff's statements about the "intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* Although the ALJ did not refer to or use the term "credibility" when she performed this subjective symptom evaluation, she was not required to do so. Accordingly, the Undersigned concludes that the ALJ did not commit reversible error by failing to perform a "substantive credibility analysis."

At step two of the subjective symptom evaluation, the ALJ also specifically concluded that the objective evidence of record, including objective medical evidence such as findings from clinical examinations and diagnostic tests, did not support Plaintiff's statements about the intensity, persistence, and limiting effects of her fibromyalgia-related symptoms. (Tr. at 34). Plaintiff alleges that the ALJ erred by relying on findings from clinical examinations and diagnostic tests. (Doc. 17 at 15–16). But as previously explained, SSR 12-2p explicitly indicates that an ALJ must consider "if objective medical evidence . . . substantiate[s] the [claimant's] statements about the intensity, persistence, and functionally limiting effects" of fibromyalgia symptoms. And if not, an ALJ must consider "all of the evidence in the case record . . . " 2012 WL 3104869, at *5. Therefore, Plaintiff's assertion that the ALJ erred by considering the lack of objective medical evidence corroborating the severity of Plaintiff's alleged symptoms simply because this case involves fibromyalgia is not well taken.

The Undersigned additionally concludes that substantial evidence supports the ALJ's determination that the objective evidence did not support Plaintiff's statements about the intensity, persistence, and limiting effects of her fibromyalgia symptoms. First, the objective medical evidence did not substantiate Plaintiff's statements. The ALJ explained, and the record evidence demonstrates, that upon examination, Plaintiff was routinely well appearing and in no acute distress. (Tr. at 381, 385, 388, 394, 513). In addition, physical examinations often revealed normal musculoskeletal symmetry, tone, strength and range of motion, steady gait, no atrophy, and no deformities. (Tr. 381–82, 385, 389, 466–68, 513, 641–46). Neurological testing results were unremarkable; testing results for autoimmune and inflammatory disorders were negative. (Tr. at 504–09, 385–86, 456–58, 471–72, 505, 726). Similarly, electrodiagnostic testing was essentially normal with minor findings attributed to poor patient effort; a spinal tap was negative. (Tr. 547, 460–61, 716).

Second, substantial evidence supports the ALJ's determination that other record evidence did not substantiate Plaintiff's statements. The ALJ discussed one of the considerations described in SSR 12-2p— medications and other treatments that Plaintiff used. Specifically, the ALJ noted, and the record reflects, that medications often "helped stabilize Plaintiff's symptoms." (Tr. at 34). In 2016 and 2017, Plaintiff sought treatment for all over body pain (Tr. at 385), nerve pain (Tr. at 387), myalgias and arthralgias (Tr. at 382), and joint pain (Tr. at 454). On January 24, 2017, she reported that no medications helped her and on March 9, 2017, she reported that gabapentin did not work. (Tr. at 456, 495). On September 21, 2017, however, Plaintiff reported that she was feeling much better on her medications after her gabapentin was increased and she was sleeping much better with Vistaril. (Tr. at 578). On October 30, 2017, Plaintiff reported that gabapentin was helping her manage her overall pain and achiness and that her sleeping was better with vistaril.

9

(Tr. at 574). On November 22, 2017, Plaintiff reported that her medications were helping. (Tr. at 636). On May 3, 2018, Plaintiff's fibromyalgia was "[s]table and controlled on current medications." (Tr. at 683). On November 8, 2018, she reported feeling OK, that her medications helped, and that her symptoms were 2 on a 10-point scale. (Tr. at 753). Plaintiff had a set-back on November 19, 2018, and her fibromyalgia was described as stable but not well controlled on medications. (Tr. at 701). At a follow up appointment on January 29, 2018, Plaintiff's gabapentin was again increased. (Tr. at 705). The records generally reflects that Plaintiff subsequently sought treatment for other issues. (*See e.g*, Tr. at 979). The ALJ also noted, and the record reflects, that although Plaintiff complained about balance issues and falls, the record does not contain evidence that Plaintiff used ambulatory aids or sought treatment for fall-related injuries. (Tr. at 34).

In sum, the Undersigned finds that the ALJ conducted a subjective symptom evaluation in accordance with SSR 12-2p and that the ALJ's evaluation was substantially supported by the record. For these reasons, the Undersigned concludes that Plaintiff's allegations of error lack merit.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's non-disability determination be **AFFIRMED**.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which

objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.

Date: May 12, 2021                      /s/ Kimberly A. Jolson
                                         KIMBERLY A. JOLSON
                                         UNITED STATES MAGISTRATE JUDGE